UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

UNITED STATES OF AMERICA,

-v-

FAHEEM WALTER,

                Defendant.

18-CR-834-6 (PAE)

ORDER

------------------------------------------------------------

PAUL A. ENGELMAYER, District Judge:

The Court has received a request from counsel for defendant Faheem Walter seeking Walter's compassionate release from the Metropolitan Correctional Center ("MCC") in Manhattan, New York, pursuant to 18 U.S.C. § 3582(c), in light of the ongoing COVID-19 pandemic. Dkt. 466 ("Def. Ltr."). The Government opposes this request. Dkt. 468 ("Govt. Ltr.").

Walter, an associate of the violent Nine Trey Gangsta Bloods gang ("Nine Trey"), was arrested on November 19, 2018, and has been detained since that date. Shortly before his arrest, on October 26, 2018, Walter suffered a gunshot wound to his abdomen, from which he has suffered lasting effects, particularly the continued use of a colostomy bag. *See* Def. Ltr. at 3. On April 3, 2019, Walter pled guilty, pursuant to a plea agreement, to one count of assault with a dangerous weapon in aid of racketeering, and a lesser included offense of the use, carrying, and possession of a firearm in furtherance of a crime of violence. On August 14, 2019, this Court sentenced Walter to a below-Guidelines term of 62 months' imprisonment to be followed by three years' supervised release; the Court imposed a below-Guidelines sentence largely due to the "physical injuries that [Walter] suffered," which had already caused Walter "enormous

suffering" and might make Walter "less of a threat" to commit acts of violence going forward. Dkt. 300 ("Sentencing Tr.") at 38.

On April 14, 2020, Walter filed a letter motion seeking a modification of his sentence on grounds relating to the COVID-19 pandemic. Def. Ltr. Walter asks the Court to modify his sentence to enable him serve the remainder of his prison term—approximately 45 months—in home confinement. *Id.* at 1–2. He argues that the after-effects of the gunshot wound he suffered put him at "increased risk of infection and serious medical complications," and that removing him from the MCC would reduce the risk that he will be infected. *Id.* at 3.

On April 15, 2020, the Government filed its letter in opposition. Govt. Ltr. It opposes Walter's early release for reasons including that Walter has yet to serve the bulk of his sentence, that his instant offense was serious and violent, and that the MCC has not placed Walter on its list of inmates at "high risk" from COVID-19. *Id.* at 1–2, 7–8.

Under 18 U.S.C. § 3582(c)(1)(A), "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [("BOP")] to bring a motion on the defendant's behalf," a court may reduce such defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable." *Id.* § 3582(c)(1)(A).

Here, the Government argues, at the threshold, that Walter's motion should be denied because he has failed to exhaust his administrative remedies, in that the BOP had not made a final decision and 30 days have not elapsed since Walter moved for compassionate release Govt. Ltr. at 3–7. The Court need not reach this argument, however, because the Court

concludes that a reduction of Walter's sentence is not warranted for two independent reasons. Such a reduction would not be "consistent with the applicable policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A)(i), nor would it be supported by the "factors set forth in section 3553(a)," *id.* § 3582(c)(1)(A).

Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence. *United States v. Ebbers*, — F. Supp. 3d —, No. (S4) 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (quoting 28 U.S.C. § 994(t)). Relevant here, the Commission's policy statement and its corresponding commentary on § 3582(a)(1)(A) state that a court may reduce a sentence for "extraordinary and compelling reasons," including where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."[1] U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A). The defendant, however, must not be a danger to the community and the reduction must be consistent with the Commission's policy statement. *Id.* § 1B1.13(2)–(3).

The first of these factors may favor Walter's early release. The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration. Although the Bureau of Prisons has not designated Walter as an inmate at high risk, Walter's claim is plausible that COVID-19 may present a heightened risk for him, insofar as he continues to suffer the effects of an October 2018

---

[1] U.S.S.G. § 1B1.13(1)(A) references only "a motion of the Director of the Bureau of Prisons" because it has not yet been updated to reflect the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, which allows defendants independently to seek compassionate release relief from federal courts. *Ebbers*, 2020 WL 91399, at *1, 4.

gunshot wound to his abdomen.² The crowded nature of federal detention centers such as the MDC present an outsize risk that the COVID-19 contagion, once it gains entry, will spread.³ And, realistically, a heightened-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past three weeks, numerous courts, including this one, have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of inmates serving federal sentences.⁴

---

² The Government argues that "defendant appears to be at no greater risk than any other inmate as a result of COVID-19" because it is "unaware of any medical analysis" that the medically required use of a colostomy bag places a person at higher risk of adverse consequences from COVID-19. Govt. Ltr. at 7. The Government also notes that it appears that Walter has been receiving treatment for his medical condition at the MCC. *Id.* The Court assumes, *arguendo*, that Walter is at higher risk than the average inmate.

³ *See* Timothy Williams, et al., *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. Times (Mar. 30, 2020), https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html; *see also United States v. Nkanga*, No. 18 Cr. 713 (JMF), 2020 WL 1529535, at *1 (citing *Interim Guidance on Mgmt. of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control and Prevention 2 (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf) (highlighting danger faced by those in jails and prisons).

⁴ *See, e.g.*, *United States v. Chandler*, No. 19 Cr. 867 (PAC), 2020 WL 1528120, at *1–3 (S.D.N.Y. Mar. 31, 2020) (granting bail application, pursuant to 18 U.S.C. § 3142(i), of defendant charged with being a felon in possession of a firearm); *United States v. McKenzie*, No. 18 Cr. 834 (PAE), 2020 WL 1503669, at *2–3 (S.D.N.Y. Mar. 30, 2020) (granting bond pending sentencing, pursuant to 18 U.S.C. § 3145(c), to defendant who had pleaded guilty to single count of assault with a deadly weapon and had previously been released on bond); *United States v. Hernandez*, No. 19 Cr. 169 (VM), 2020 WL 1503106, at *1 (S.D.N.Y. Mar. 30, 2020) (granting bail application, pursuant to § 3142(i), of 64-year-old defendant with asthma and high blood pressure that placed him "at a substantially heightened risk of dangerous complications should he contract COVID-19"); *United States v. Witter*, No. 19 Cr. 568 (SHS), Dkt. 40 at 2–3 (S.D.N.Y. Mar. 26, 2020) (granting bond pending sentencing, pursuant to § 3145(c), to defendant who had pleaded to a narcotics offense); *United States v. Perez*, No. 19 Cr. 297 (PAE), 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (granting bail application, pursuant to § 3142(i), of 65-year-old defendant with COPD, in light of "unique confluence of serious health issues and other risk factors facing this defendant, . . . which place him at a substantially heightened risk of dangerous complications should [he] contract COVID-19"); *United States v.*

The Court cannot find, however, that Walter "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). The underlying conduct that led to Walter's sentence in this case gravely endangered the safety of the community. As a member of the Nine Trey gang, Walter participated in several acts of violence, including the April 3, 2018 armed robbery of gang rivals in midtown Manhattan, an April 21, 2018 shooting at the Barclays Center, and a July 16, 2018 shooting in Brooklyn. *See* Sentencing Tr. at 32–34. And, although Walter did not personally fire his weapon during any of these incidents, he admitted in an audio recording that he regularly carried a gun on his person in case due to Nine Trey's violent disputes. *Id*.[5]

Moreover, and decisive here, the Court cannot find that the application of the § 3553(a) factors favors an early release. Two such factors, to be sure, are the "history and characteristics of the defendant," and "the need to provide the defendant with needed . . . medical care." 18 U.S.C. § 3553(a). These factors appear to favor Walter's early release in light of the COVID-19 pandemic for the reasons discussed above. But they are outweighed by the combined force of

---

*Knox*, No. 15 Cr. 445 (PAE), Dkt. 1088 (S.D.N.Y. Apr. 10, 2020) (granting compassionate release motion, pursuant to 18 U.S.C. § 3582(c), of defendant who had less than 7 months left to serve out of 88-month sentence); *United States v. Jasper*, No. 18 Cr. 390 (PAE), Dkt. 441 (S.D.N.Y. Apr. 6, 2020) (ordering compassionate release of defendant with Crohn's disease who had served all but 34 days of a 4-month sentence); *see also United States v. Stephens*, — F. Supp. 3d —, No. 15 Cr. 95, 2020 WL 1295155 (AJN), at *3 (S.D.N.Y. Mar. 19, 2020) (granting defendant's request for reconsideration of bail conditions and releasing him to home confinement, while noting that, in the alternative, § 3142(i) would necessitate his temporary release).

[5] Although Walter's criminal history is far less extensive than those of some of his fellow Nine Trey defendants, the Court still found it "troubling" that "two brushes with the criminal justice system . . . did not steer [Walter] clear of crime" or prevent him from getting "mixed up in Nine Trey and [a participant in] acts of violence, including carrying a gun for the gang." Sentencing Tr. at 36. For this reason, consistent with the Court's analysis during the sentencing hearing, Walter's release some 45 months early would expose the community to a risk that he would resume violence.

several other factors: "the nature and circumstances of the offense" and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law . . . to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." For the reasons stated in detail at Walter's sentencing, which the Court incorporates by reference, a sentence in the range of 62 months' imprisonment was necessary to achieve those goals. Converting Walter's sentence to one of home confinement, when he has served just 17 months of a 62-month term of incarceration, would disserve these important § 3553(a) factors. *See, e.g.*, *United States v. Credidio*, No. 19 Cr. 111 (PAE), Dkt. 62 (S.D.N.Y. Mar. 30, 2020) (denying, as inconsistent with § 3553(a) factors, compassionate release motion for reduction of sentence to home confinement for recently sentenced 72-year-old defendant where defendant had served only two months of a 33-month sentence); *United States v. Denard Butler*, No. 18 Cr. 834 (PAE), Dkt. 461 (S.D.N.Y. Apr. 7, 2020) (similarly denying compassionate release motion for low-ranking Nine Trey defendant diagnosed with asthma where defendant had served only 15 months of a 60-month sentence); *United States v. Roland Martin*, No. 18 Cr. 834 (PAE), Dkt. 465 (S.D.N.Y. Apr. 10, 2020) (similarly denying compassionate release motion for high-ranking Nine Trey defendant who was still recovering from a collapsed lung where defendant had served only 16 months of a 66-month sentence).

Accordingly, finding that the § 3553(a) factors do not support a reduction of sentence, the Court denies Walter's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

SO ORDERED.

                                               *Paul A. Engelmayer*
                                            PAUL A. ENGELMAYER
                                            United States District Judge

Dated: April 16, 2020
       New York, New York