UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

FAHEEM WALTER,

Defendant.

18-CR-834-06 (PAE)

ORDER

PAUL A. ENGELMAYER, District Judge:

The Court has received a *pro se* motion from defendant Faheem Walter, seeking, for the fourth time, compassionate release from the Federal Correctional Complex in Coleman, Florida, pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 609 ("Def. Mtn."). The Government opposes this motion. Dkt. 634 ("Gov't Opp.").

As background, Walter, an associate of the violent Nine Trey Gangsta Bloods gang ("Nine Trey"), was arrested on November 19, 2018, and has been detained since that date. Shortly before his arrest, on October 26, 2018, Walter suffered a gunshot wound to his abdomen, from which he has experienced lasting effects, particularly the continued use of a colostomy bag. *See* Dkt. 466 at 3; Def. Mtn. at 10. On April 3, 2019, Walter pled guilty, pursuant to a plea agreement, to one count of assault with a dangerous weapon in aid of racketeering, and a lesser included offense of the use, carrying, or possession of a firearm in furtherance of a crime of violence. On August 14, 2019, the Court sentenced Walter to a below-Guidelines term of 62 months' imprisonment to be followed by three years' supervised release. *See* Dkt. 257. The Court imposed a below-Guidelines sentence largely in recognition of the "physical injuries that [Walter] suffered," which had caused Walter "enormous suffering" and stood to make Walter "less of a threat" to commit acts of violence going forward. Dkt. 300 ("Sentencing Tr.") at 38.

On April 16, 2020, shortly after the onset of the COVID-19 pandemic, the Court denied Walter's first compassionate release motion, reviewing at length, *inter alia*, Walter's medical condition, history, and offense conduct, and concluding that "the Court cannot find that the application of the § 3553(a) factors favors an early release." Dkt. 469 at 5. On June 2, 2020, the Court denied Walter's second such motion, citing the reasons set forth in its denial of the first motion and finding that Walter had not presented new information or arguments. Dkt. 487 at 1. On July 31, 2020, the Court denied Walter's third such motion, again for the reasons stated in its order denying the first motion and without prejudice to Walter renewing his motion after he had served at least half of his sentence. *See* Dkt. 521 at 1–2.

On August 11, 2021, the Court received Walter's fourth motion for compassionate release. The motion was made on a Bureau of Prisons ("BOP") form used for such motions. On it, Walter checked "yes" alongside boxes that inquired whether there were extraordinary and compelling reasons for his release, and either checked, or appeared to have checked, "yes" alongside a box that inquired whether he had "a serious physical or medication condition; a serious functional or cognitive impairment; or deteriorating physical or mental health because of the aging process that substantially diminishes my ability to provide self-care within the environment of a correctional facility, and I am not expected to recover from this condition."[1] Def. Mtn. at 4. In a separate handwritten paragraph, Walter identified, as other extraordinary and compelling bases for his release, that (1) unlike at the time of his earlier motions, he has now

[1] Walter unambiguously checked the "yes" box alongside the question asking whether there were extraordinary and compelling reasons for his release, but as to the second inquiry, the box appeared to have contained a check which had been crossed or scratched out. *See* Def. Mtn. at 4. Out of solicitude for Walter, the Court will treat him as having checked "yes" alongside that box.

completed service of more than 50% of his sentence, and (2) a female officer whom he was accused of threatening was purportedly demoted due to misconduct. *Id.* at 5.[2]

On April 21, 2022, the Government filed its letter opposing release. The Government states that updated medical records indicate that the BOP has been treating Walter's medical condition and recommended that he undergo testing to determine his eligibility for reversal of the colostomy, and that Walter received the second dose of the COVID-19 vaccine in September 2021. *See* Gov't Opp. at 1. The Government also attached as an exhibit Walter's disciplinary records, which reflect four disciplinary infractions since he filed his third motion for compassionate release. *Id.* at 2. These include possessing a hazardous tool, possessing a dangerous weapon while fighting with another inmate, failing to stand for the count and refusing to obey an order, and interfering with taking the count. *Id.*; *id.* Ex. A. The Government argues that, in light of the violent nature of Walter's offense and his behavior while incarcerated, he remains a danger to the community and should continue to be incarcerated. *Id.* at 2.

Under section 3582(c)(1)(A), "upon motion of the defendant," and "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," the Court may reduce such defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A).

[2] The docketed motion refers to an attached memorandum and additional medical information and states that the medical information was filed under seal. *See* Def. Mtn. at 5, 13. In fact, no such materials were attached or filed under seal, and neither the Court nor the District's Records Management Office has been able to locate such materials elsewhere. This decision is without prejudice to Walter's right to file a new motion supported by such or other materials.

Originally, section 3582(c)(1)(A) did not permit defendants to initiate compassionate release proceedings and instead required the BOP to seek such release on their behalf. *United States v. Phillibert*, 557 F. Supp. 3d 456, 459 (S.D.N.Y. 2021). However, "[a]s part of the First Step Act of 2018, Congress authorized courts to reduce a term of imprisonment upon motion by a defendant." *United States v. Amato*, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).

Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence. *United States v. Brooker*, 976 F.3d 228, 232 (2d Cir. 2020) (citing 28 U.S.C. § 994(t)). The Commission did so in U.S.S.G. § 1B1.13 and its commentary, which, *inter alia*, (1) define various circumstances that present extraordinary and compelling reasons justifying release; and (2) require that a defendant not be a danger to the safety of the community. U.S.S.G. § 1B1.13(1)–(3) & cmt. n.1. However, the guidance under this provision applies only to a "motion of the Director of the Bureau of Prisons." *Id.* § 1B1.13. Accordingly, the Second Circuit has held that U.S.S.G § 1B1.13 "is not applicable to compassionate release motions brought by defendants," rather than by the BOP, and "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling" in such cases. *Brooker*, 976 F.3d at 236 (internal quotation marks omitted); *see also id.* at 237 ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."). Thus, when assessing a motion brought directly by an imprisoned defendant rather than by the BOP, the Court is not constrained by U.S.S.G. § 1B1.13's enumeration of extraordinary and compelling reasons and may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Id.* at 237. Even if such reasons are present, the Court must also assure itself that release is consistent with

"the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

Upon careful review of Walter's application, the Court finds that a reduction in Walter's sentence is not warranted. The Court recognizes that Walter has served approximately 48 months of his 62-month sentence, a significantly larger portion than he had served when the Court denied his first application for compassionate release in April 2020, such that release today would work a less dramatic shortening of his sentence than it would have at the time of that, or his two immediately ensuing, applications. Nonetheless, for two reasons, his application for release is unpersuasive.

First, Walter has not demonstrated that extraordinary and compelling circumstances warrant his release. To the extent that Walter relies on his medical conditions stemming from his pre-arrest gunshot wound, the Court accounted for his medical condition at his sentencing, and imposed a materially lower sentence than Walter otherwise would have received to account for his suffering and presumably reduced ability to commit a crime requiring physical agility. *See, e.g.*, Sentencing Tr. at 45 (noting "the extent of [Walter's] physical suffering and the unusual way in which that is likely to function as a specific deterrent"). As to the intervening event of the pandemic, Walter has not shown that COVID-19 today poses a particular risk to him, whether on account of his abdominal injuries or otherwise. And, as the Government notes, Walter received a second dose of the Pfizer vaccine in September 2021. Gov't Opp. at 1. Nor has Walter, unlike some applicants for release, chronicled extraordinarily severe prison conditions in the Florida facility in which he has been held, whether occasioned by the pandemic or other circumstances, that might rise to the level of extraordinary and compelling circumstances justifying early release.

In any event, even assuming that Walter had a medical or other condition that qualified as extraordinary and compelling, the § 3553(a) factors, on balance, do not support a reduction in the original sentence. Two factors—the "history and characteristics of the defendant," and the need "to provide the defendant with needed . . . medical care," 18 U.S.C. § 3553(a)(1), (2)(D)—can be read as mitigating, as indeed the Court viewed them in fashioning the original sentence. But as set out more fully in the Court's order denying Walter's first motion for release, *see* Dkt. 469, other factors outweigh these, and continue to support the original sentence. In particular, the violent and alarming "nature and circumstances of the offense," *id.* § 3553(a)(1), and the "need for the sentence imposed" to "reflect the seriousness of the offense" and to "protect the public from further crimes of the defendant," *id.* § 3553(a)(2)(A), (C), strongly favor the 62-month sentence. As the Court explained at sentencing, Walter participated in multiple public acts of violence, including the April 3, 2018 armed robbery of gang rivals in midtown Manhattan and the April 21, 2018 shooting at the Barclays Center. *See* Sentencing Tr. at 32–33. These exposed the community to grave danger, demanded a lengthy sentence as a matter of just punishment, and suggested—and today continue to suggest—a heightened interest in public protection. *See id.* at 33–34, 37. Walter's recent disciplinary infractions prevent the Court from lightly assuming that, if released today, Walter can be counted upon to scrupulously follow the law. These infractions reinforce the § 3553(a) interests, which the Court emphasized at sentencing, in public protection and specific deterrence.[3]

[3] Although Walter's criminal history as of sentencing was less extensive than those of some of his co-defendants, he had had prior brushes with the criminal justice system which, the Court noted at sentencing, had not deterred him from the violent crimes he committed with Nine Trey. Sentencing Tr. at 36.

For these reasons, the Court denies Walter's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: November 3, 2022
New York, New York